## PANHANDLE & SANTA FE RAILWAY COMPANY V. HONORABLE C. R. SUTTON, DISTRICT JUDGE, ET AL.

No. 6333. Decided May 15, 1935.
Rehearing overruled June 12, 1935.
(81 S. W., 2d Series, 1005.)

*Terry, Cavin & Mills,* of Galveston, *Collins, Jackson & Snod-grass,* of San Angelo, for relator.

Authorities in support of issuing the writ of mandamus. Gulf, C. & S. F. Ry. v. Canty, 115 Texas, 537, 285 S. W.,296; Corgimeglia v. Davis, 116 Texas, 412, 292 S. W., 875.

*Grisham Bros.* and *J. A. Lantz,* of Eastland, *J. B. Cotton,* of Crane, *J. A. Moore,* of Big Lake, for respondents.

MR. PRESIDING JUDGE RYAN delivered the opinion of the Commission of Appeals, Section B.

This is an original proceeding for mandamus to compel a district judge to render judgment for relator upon a jury's verdict, certain special issues having been answered and others not answered. Thirty-five special issues were submitted to the jury, of which only fifteen were answered. Upon the return of said verdict, relator (defendant below) filed motion for judgment in its favor, which was denied by the trial court, and the case now stands on the docket of said court subject to call for trial.

Plaintiff below, George Brown, brought suit against the railway company, in the District Court of Reagan County to recover damages for personal injuries allegedly sustained by him through the company's negligence.

The petition alleged in substance, that it became necessary for plaintiff, in the course of his business, near the town of Texon in Reagan County, to cross the railroad track at a usual and customary crossing, commonly used by pedestrians for that purpose, when it was blocked by a freight train largely composed of box cars and oil cars, approximately sixty in number; the train remained perfectly stationary on the track for some fifteen minutes, when, believing that the train would remain upon said track for a sufficient time, plaintiff decided to make said crossing by passing between the box cars. At that point about twenty box cars were to his west and forty to his east, with no usual or convenient crossing at either end of the train; the path crossing the track had for many months, been used by pedestrians at said point, and the company, its agents and employees knew, or by the exercise of ordinary care, should have known of the use being made of the road in question by pedestrians in crossing the track. A brakeman stood near and in plain view, when plaintiff attempted to make the crossing by going between the cars and the brakeman knew that the plaintiff was attempting to go between them; the attempt to make the crossing was from the south side of the train and the brakeman was standing, also, to the south of the train, some ten or twenty feet from the plaintiff, and while plaintiff was thus attempting to make the crossing, the train suddenly moved with a violent jerk and impact, causing the plaintiff to be caught, thrown and crippled.

It is further averred in the petition that the brakeman was looking at plaintiff when he went between the cars, and while plaintiff was between said cars, said brakeman either signalled for the train to move, or knowing plaintiff's position of danger and imminent peril, failed to signal the train to remain station-

ary; that he knew of the dangerous position of plaintiff in time to have avoided injuring him and by ordinary care, which he failed to exercise, could have prevented the train from starting, and wholly failed to exercise any care for plaintiff's safety.

In addition to said plea of discovered peril, plaintiff alleged as specific grounds of negligence, the duty of the defendant in the exercise of ordinary care, in view of the known use of said crossing by the passing public, after the lapse of five minutes, to cut said train and permit plaintiff to pass, notwithstanding which duty, the defendant blocked said way and crossing at least fifteen minutes and without evincing any purpose to open the way, which was negligence and proximate cause of plaintiff's injury and damage; that it was the duty of the defendant when it blocked said foot path to ring or sound its engine bell before starting said train, to warn plaintiff of its intention and purpose to move said train, which defendant failed to do, and this was negligence and proximate cause of plaintiff's injury and damage; failure to sound the whistle of its engine before starting the train; failure of the brakeman to keep in touch with the operatives of the train in such a way as to warn them of plaintiff's danger; occupancy of said crossing for an unreasonable length of time, no notice or warning having been given plaintiff that the train would start, in which connection it was alleged that there was no other usual, customary or available crossing for pedestrians at, or reasonably near, said place; that defendant in unnecessarily and negligently obstructing said crossing for an unreasonable length of time, knew, or in the exercise of ordinary care, should have known, that plaintiff and other pedestrians would necessarily undertake to make said crossing; all of which constituted negligence and proximate cause of the injuries and damage sustained by plaintiff. It was further alleged that, if the brakeman did not discover plaintiff's peril, it was the defendant's duty to keep a reasonable lookout at the time and place, for pedestrians making the crossing, and defendant failed to keep such lookout and failed to discover plaintiff in his peril, which was negligence and a proximate cause of plaintiff's injuries and damages sustained by him.

It was further alleged that plaintiff, in attempting to pass between said box cars stepped upon the open coupling, and with the sudden starting of the train, the coupling closed, caught plaintiff's left foot, resulting in the same being crushed; that plaintiff fell some ten or twelve feet and struck the ground on the north side of the track with great force and impact,

causing certain general and permanent specified injuries. Plaintiff's age was stated as twenty-four, and judgment for $35,400.00 was prayed.

The defendant answered by general and special exceptions, general denial, special pleas of contributory negligence in that plaintiff was negligent in being upon said train at said time, in placing his foot on the coupler, in failing to watch for any movement of the train which might injure him, in not going around the end of the train for the purpose of crossing the track, and in not notifying some member of the train before going upon the same; also that neither it (the defendant) nor any of its agents or employees had any knowledge of plaintiff's being in or about its train and had no reason to so anticipate; that plaintiff voluntarily placed himself in position where he might be injured, and since neither it nor its agents or employees saw the plaintiff at the time he received his injuries, it can not allege exactly how such injuries, if any, occurred, but the same were caused by plaintiff's own negligence, and if mistaken in such respect, then such injuries resulted from an unavoidable accident.

No statement of facts has been filed and therefore the contentions are to be determined without reference to the evidence, but we must assume that it was sufficient to go to the jury on the different issues submitted.

1 Relator argues here that the only basis of liability on its part, as plead, was that of discovered peril, and the jury having found for it on that issue, such finding is decisive of the case. This is not correct, because plaintiff's petition made issues of fact for the jury's determination, as to whether the defendant (relator) was negligent in the respects therein set forth and whether such negligence constituted a proximate cause of plaintiff's injuries and damage; defendant's answer affirmatively plead contributory negligence and unavoidable accident, which likewise were issues to be passed on by the jury, not only because they were so affirmatively plead, but in the very nature of the case, had to be decided as a prerequisite to plaintiff's right to recover, or not.

Jugde Sharp said in Dallas Ry. & Term. Co. v. Bankston (Com. App.), 51 S. W. (2d) 304, at page 308, "Of course, if the pleadings and the evidence raise the issue of discovered peril and the jury finds upon that issue in favor of the injured party, the issues of primary negligence and contributory negligence become immaterial. However, if the jury should find against the injured party upon the issue of discovered peril, that

would not remove from the case the issues of primary negligence and contributory negligence." So here, the jury having found against the injured party upon the issue of discovered peril, the issues of primary negligence and contributory negligence still remained in the case, and the jury should have answered the issues pertaining thereto.

The jury did not answer the issue of unavoidable accident submitted by the court, nor any of the issues embracing primary or contributory negligence. For example, issues submitting the question whether plaintiff attempted to cross the track between cars and sustained an injury while doing so, whether the place of crossing was commonly used by pedestrians within the defendant's knowledge, whether the defendant was negligent in leaving the train upon the track for the length of time it did, whether the failure to ring the engine bell was negligence and a proximate cause of plaintiff's injuries (the jury found that the defendant failed to ring said bell), whether the defendant's failure to sound its whistle before starting said train a sufficient time to warn plaintiff that it was about to move the train was negligence and a proximate cause of plaintiff's injuries (the jury found that the defendant failed to sound its whistle), whether the plaintiff was negligent in being upon the train at the time of his alleged injury, whether the plaintiff was negligent in placing his foot on the coupler of the train, or in failing to watch for any movement of the train which might injure him, or in failing to go around the end of the train in crossing the track, or in failing to notify some member of defendant's train crew of his intention to go on said train, or in failing to exercise ordinary care for his own safety at the time and place in question, were all unanswered.

2, 3    Under the pleadings the question whether or not the crossing was a public crossing presented an issue of fact for the determination of the jury. Houston E. & W. T. Ry. Co. v. Sherman, 42 S. W. (2d) 241 (Com. App.); Id., 10 S. W. (2d) 243; Houston E. & W. T. Ry. Co. v. Peterson, 227 S. W., 747; St. Louis S. W. Ry. Co. v. Douthit, 208 S. W., 201, w. e. ref.; Mosouri P. R. R. Co. v. Lee, 70 Texas, 496. If it was a public crossing, plaintiff was within his rights in entering upon it and was neither a trespasser nor a licensee; if it was not public, he may have been a licensee, to whom the defendant owed the duty to exercise ordinary care to avoid injuring him. Freeman v. Terry, 144 S. W., 1016, w. e. ref., is similar in almost every respect to the instant case. There, a long freight train stopped at the station in Dilley, Texas, blocking a street. Terry having

occasion to go from the east to the west side of town, attempted to pass between two cars. While he was doing so, the cars moved forward and backward, jammed together and his foot was caught in the coupling device and injured. The crew did not ring the bell or blow the whistle or give any other warning before suddenly moving the train.

The court said:—

"We could assent to the proposition that such person could not recover where he knew the train was about to start, or liable to start, at any moment. But, as heretofore explained, it appears that plaintiff did not know this, and had reason to think otherwise. Under this evidence, plaintiff cannot be regarded as a trespasser (Littlejohn v. Railway Co., 49 S. C., 12, 26 S. E., 967), and it therefore cannot be held that no duty was owing pedestrians along the highway until they were discovered in a place of danger. Railway v. Green, 20 Texas Civ. App., 5, 49 S. W., 670. That a railroad permits its train to obstruct a highway for an unreasonable time is itself an act of negligence. It seems to us that, where a train is held obstructing a street unnecessarily and for an unreasonable time, it is a wrongdoer, and not entitled to precedence in the use of the street as against the right of the public to pass, and is in no position to say that a person crossing over its train in using the highway is a trespasser on its premises and property. * * * It could reasonably have been anticipated that some persons, at least, would undertake to cross over between the cars, where they were held on the track obstructing the crossing for a considerable time.

"As stated in Schlemmer v. Railway Co., 205 U. S., 1, 27 Sup. Ct., 407, 51 L. Ed., 681: 'Aside from the knowledge possessed by brakemen that the plaintiff and his companions and others were about the cars, a jury might well find, from all the circumstances that the train operatives, in the exercise of ordinary care, ought to have anticipated that persons might be in the act of crossing, or be on, or between, or about, the cars, and that not to give warning before moving the train would result in injury.'

"The negligence embodied in the testimony was the act of suddenly and without warning, and without any provision for the protection of persons that might be using the street crossing, setting the train in motion. The care defendant was required to exercise in this transaction was that degree of care which was reasonably called for to meet and avoid the dangers which ought to have been anticipated under the circumstances.

* * * Whether or not the employes of defendant acted with reasonable care in respect to a duty imposed upon them by the existing conditions and all the circumstances, with reference to the public having occasion to use this street crossing, was a question for the jury, and they could properly, under the evidence, have found that they did not exercise the care the situation demanded of them in that respect."

In Chicago, R. I. & G. Ry. Co. v. Johnson, 101 Texas, 422, the facts were:—the street was blocked with a train of freight cars for a longer period than five minutes, in violation of an ordinance of the City of Dalhart; such train of cars was suddenly moved without warning, by ringing the bell or blowing the whistle or otherwise, to Hugh Johnson, who attempted to cross between the cars and was injured in so doing. Contributory negligence was one of the defenses relied on, and consisted, as alleged, in Johnson's conduct in attempting to cross between the cars when no person of ordinary prudence would have made such attempt, and also in his placing his foot between the bumpers.

The court charged the jury, in substance, among other things, to find for plaintiff (unless he failed to exercise ordinary care for his own safety) if it was customary for the company to block the crossing for a longer period than five minutes at a time, and it was customary at said times for people passing to and fro to pass between the cars when the crossing was so blocked, and this custom was known to the defendant, and that Johnson attempted to so pass at said time and his foot was caught between the bumpers and mashed, necessitating amputation, and that the employees in charge of said cars moved the same without warning to Johnson or without ringing the bell or blowing the whistle, and that the moving of said cars under those circumstances was negligence.

That case reached the Supreme Court on certified questions, one of the judges of the Court of Civil Appeals having dissented—the majority being of opinion that the charge was erroneous.

Judge Williams sustained the dissenting judge, who said "the blockading of the street and the negligent starting of the cars in motion are so interwoven as to constitute an inseparable act of negligence" and "in the present case the court's charge required a finding of negligence both in the particulars of blocking the crossing and in starting the cars before plaintiff would be entitled to a recovery. * * * Necessarily he would not have attempted to cross as he did if the street had not

been blockaded, so that his testimony in his paricular does not alter the situation or make that which would otherwise be a contributing cause the sole proximate cause of the injury."

4  So, irrespective of statutory requirements, the question whether, under the facts of a particular case, the railway company was negligent in failing to give warning before suddenly starting a train at or near a crossing is a question of fact for the determination of the jury.  Gulf C. & S. F., Ry. Co. v. Hall, 80 S. W., 133; Lancaster v. Carlock, 267 S. W., 1028; Texas & N. O. Ry. Co. v. Brouillette, 130 S. W., 886.

5  We conclude, the jury not having made findings on material issues submitted to them, the court was not authorized to supply such findings nor to render judgment on issues answered, and a mistrial of the case resulted.  Copeland v. Brannan, 70 S. W. (2d) 660; Speer's Law of Special Issues, p. 559, sec. 430.  All material issues in the case must be submitted and, of course, answered.  Speer's Special Issues, p. 198, sec. 149.

Relator relies upon the holdings in Gulf C. & S. F. Ry. Co. v. Canty, 115 Texas, 537, 285 S. W., 296, and Corgimeglia v. Davis, 116 Texas, 412, 292 S. W., 875, but they are inapplicable here.

In the Canty case, the issues were answered and the trial court set the verdict aside solely because "there is in the opinion of the court an irreconcilable conflict in the answers of the jury to the special issues submitted to it."  Presiding Judge Powell, for the Commission of Appeals, said: "the court having set aside the verdict, as expressly stated, solely because of 'irreconcilable conflict' in the answers of the jury, then he had no right to do so if no such conflict in fact existed."  There the issues were answered and the question of law arose, were they in irreconcilable conflict with one another.  Here, the issues were not answered.

In the Davis case, the verdict covered all the facts tendered in the pleadings necessary to the rendition of judgment, and as in the Canty case, the trial court said that because of conflict in the findings of the jury on the special issues submitted, a mistrial was ordered.  Judge Bishop, for the Commission of Appeals, held there was no such conflict and the trial judge has no arbitrary right to refuse to enter judgment on a verdict which constitutes a finding on all the facts tendered in the pleadings necessary to the rendition of judgment, just as was held in the Canty case.

Ft. Worth & D. C. Ry. Co. v. Bell, 14 S. W. (2d) 856, to

which we have been referred, is based upon a full hearing of all the facts and jury findings on the issues submitted by the court. The court there held that as a matter of law the evidence did not warrant a judgment for plaintiff. Here, we have no statement of facts and no findings of the jury by which may be measured the questions of negligence, contributory negligence, proximate cause, et cetera. That case is therefore not in point here.

We conclude that a mistrial was correctly entered by the trial judge and the application for a writ of mandamus to compel him to render judgment should be denied.

Opinion adopted by the Supreme Court May 15, 1935.

(Rehearing overruled June 12, 1935.)